SHURPIT, Appellant, v. BRAH, Respondent.

*February 28—April 12, 1966.*

For the appellant there was a brief by *William F. Hayes* and *Hayes & Priebe,* all of Ripon, attorneys, and *Earl A. Charlton* and *Charlton, Yanisch & Ritchay,* all of Milwaukee, of counsel, and oral argument by *Mr. William F. Hayes* and *Mr. Earl A. Charlton.*

For the respondent there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Norman C. Skogstad* and *Thomas N. Klug* of counsel, all of Milwaukee, and oral argument by *Norman C. Skogstad.*

BEILFUSS, J. The plaintiff does not contend that the verdict is contrary to the evidence but does argue that the

trial court committed several prejudicial procedural errors and that he is entitled to a new trial.

The errors alleged and relied upon in this appeal are: (1) That the trial court erred in refusing to allow plaintiff to offer evidence of defendant's negligence during and after the first surgery and treatment in November, 1958, or in the alternative in refusing to allow the plaintiff to amend his complaint during trial; (2) that the trial court erred in refusing to permit adverse and cross-examination of the defendant doctor respecting his opinions as to alleged malpractice and in refusing to allow cross-examination of the defendant's expert witnesses as to their opinions; and (3) that it was error to refuse to submit an instruction on *res ipsa loquitur* to the jury.

The trial court, in response to objection by the defendant, clearly restricted the plaintiff to proof of negligence as to care and treatment on and after May 11, 1959, at which time he entered the hospital for the amputation of the remaining portion of his right hand.

A few days before the commencement of the trial in February of 1965, plaintiff's counsel found a copy of a letter written by Dr. Brah to Briggs & Stratton dated May 26, 1959, as a report in connection with the plaintiff's workmen's compensation claim. The letter describes the plaintiff's injury and treatment from November 14, 1958, and concludes with this final paragraph:

"At this time it is felt by myself, as well as by others, that because of the crushing injury, organisms were buried in the tissues at the time of the original injury. These organisms were lighted up by the fact the surgery was again done at about the area where the previous injury had occurred. It is highly characteristic of this type of organism to be dormant for months or years in the tissues only to be stimulated at surgical procedure."

On several occasions during the trial the plaintiff sought to introduce this letter, particularly the quoted paragraph, into evidence upon the ground that it constituted an admission or declaration against interest.

The trial judge consistently sustained an objection to the letter upon the grounds that it was only an opinion and that any claimed acts of negligence by Dr. Brah prior to May 11, 1959, were not at issue for the reason that they were beyond the scope of the pleadings.

The trial court did permit the plaintiff to cross-examine Dr. Brah as to his records, the hospital records, and the contents of the letter, exclusive of the last paragraph, for the purpose of establishing the medical history known to or available to Dr. Brah at the time of the May, 1959, surgery, but not for the purpose of establishing actionable negligence.

Plaintiff contends that the allegation in the second amended complaint to the effect that he had been under the continuous care of Dr. Brah from November 14, 1958, is sufficient to bring any of the acts of Dr. Brah within the scope of the pleadings.

The complaints also allege "that on or about the 11th day of May, 1959, the plaintiff was admitted to said hospital, free from all infections and, especially, free from gas gangrene." The specific acts of negligence alleged by the plaintiff all go to the care and treatment after May 11, 1959. Construing the complaint as a whole, we agree with the trial court that the scope of the pleadings limits the issue of negligence to acts of the defendant on and after May 11, 1959.

The plaintiff sought, during the course of trial, to orally amend his complaint so as to encompass claims of negligent care and treatment extending back to date of injury, November 14, 1958. In support of his argument he states a subpoena for adverse discovery examination required that Dr. Brah produce all his books and records concerning his care and treatment of the plaintiff, and that the Briggs & Stratton letter was not produced. The subpoena is not a part of the record here and it does not appear that Dr. Brah in fact had a copy of the letter to Briggs & Stratton. We cannot on appeal determine the extent of the command of the subpoena if it is not a part of the

record. The trial court in denying the motion to amend the pleadings noted that the summons was served upon defendant on December 7, 1961, more than three years subsequent to the events of November 14, 1958, and that the statute of limitations [1] barred any claim for personal injuries arising more than three years before the commencement of the action. The court further stated that plaintiff had not only drawn and served the complaint but also two amended complaints. The injury occurred in 1958 and surgery performed in 1958 and 1959; the case was brought to trial in 1965. Clearly the plaintiff had more than ample time to investigate and state his cause of action. We find no abuse of discretion in refusing to allow a third amendment of the complaint, in fact to permit an amendment in view of the objections based upon the statute of limitations so as to reach beyond three years from the date of the commencement of the action would have been error.

The plaintiff contends that it was error to exclude the letter by Dr. Brah to Briggs & Stratton as an exhibit. The exhibit could have been admitted as a part of the history of the plaintiff's condition as it was known to Dr. Brah on May 11th, provided it was admitted with proper cautionary instructions as to limitations. If it was offered primarily for the purpose of attempting to establish negligence, it was properly excluded. The trial court must be allowed considerable latitude in determining whether exhibits which serve both a proper and improper function are to be received. In this instance the plaintiff was permitted to show the history in considerable detail through the hospital records, the doctor's records and by cross-examination of the doctor as an adverse witness.

[1] "330.205 WITHIN 3 YEARS. Within 3 years:

"(1) An action to recover damages for injuries to the person for such injuries sustained on and after July 1, 1955, unless notice in writing as provided in s. 330.19 (5), 1955 statutes, was served prior to July 1, 1959, in which event s. 330.19 (5), 1955 statutes, shall apply. . . ."

Under these facts it was not an abuse of discretion to exclude the letter.

The plaintiff contends that the trial court committed prejudicial error in denying him the right to examine the defendant as an adverse witness as to his opinions of the cause of gas gangrene in plaintiff's arm and proper treatment to be rendered. The plaintiff was permitted, both on adverse examination and in cross-examination, to inquire into what the defendant did in examination and treatment but was not allowed to inquire as to Dr. Brah's opinion as to the cause or proper treatment in view of the history and his examination of the plaintiff.

We do not perceive that plaintiff should have been so limited under our adverse examination statute.[2]

The courts of California and New York in considering this problem under similar statutes have held that a physician or surgeon can be examined adversely concerning the proper treatment of the injury or illness suffered by the plaintiff in a malpractice case, even though it calls for expert opinion.[3]

In *Lawless v. Calaway* (1944), 24 Cal. (2d) 81, 90, 91, 147 Pac. (2d) 604, the California court stated:

"Statutes . . . [providing for adverse examination] were enacted to enable a party to call his adversary and elicit his testimony without making him his own witness

[2] "325.14 ADVERSE EXAMINATION AT TRIAL; DEPOSITION AS EVIDENCE; REBUTTAL. (1) Any party or any person for whose immediate benefit any civil action or proceeding is prosecuted or defended, or his or its assignor, officer, agent or employe, or the person who was such officer, agent or employe at the time of the occurrence of the facts made the subject of the examination, may be examined upon the trial as if under cross-examination, at the instance of any adverse party. Any other party adverse in interest may then re-examine such witness as to all matters tending to explain or qualify testimony given by him and if he does not intend thereafter to make the witness his witness may ask him questions proper for the purpose of impeachment."

[3] For an annotation on the subject and citations of cases going both ways see 88 A. L. R. (2d) 1186.

. . . They are remedial in character and should be liberally construed in order to accomplish their purpose . . . It is well settled that a plaintiff in a malpractice action can establish his case by the testimony of the defendant therein. . . It is equally well settled that expert testimony is ordinarily required to prove the material or relevant issues in an action for malpractice. Neither the letter nor the spirit of the statute suggests any reason why the defendant in such an action should not be examined with regard to the standard of skill and care ordinarily exercised by doctors in the community under like circumstances and with respect to whether his conduct conformed thereto. We are of the opinion that such examination should be permitted under section 2055 [Code of Civil Procedure] even though it calls for expert testimony. . . There are cases which may support a contrary conclusion . . . but in our opinion a rule excluding such testimony is at variance with the theory underlying the statute."

In *McDermott v. Manhattan Eye Hospital* (1964), 15 N. Y. (2d) 20, 27, 255 N. Y. Supp. (2d) 65, 203 N. E. (2d) 469, the New York court held:

"That the defendant is an 'expert' and that the particular questions asked of him are those which only an expert can answer, seem beside the point. It is at least arguable that the doctor's knowledge of the proper medical practice and his possible awareness of his deviation from that standard in the particular case are, in a real sense, as much matters of 'fact' as are the diagnosis and examination he made or the treatment upon which he settled. More importantly, however, by allowing the plaintiff to examine the defendant doctor with regard to the standard of skill and care ordinarily exercised by physicians in the community under like circumstances and with regard to whether his conduct conformed thereto, even though such questions call for the expression of an expert opinion, the courts do no more than conform to the obvious purpose underlying the adverse-party-witness rule. That purpose, of course, 'is to permit the production in each case of all pertinent and relevant evidence that is available from the parties to the action' . . . The issue whether the defendant doctor deviated from the proper and approved practice customarily adopted by physicians

practicing in the community is assuredly 'pertinent and relevant' to a malpractice action."

The defendant called, as witnesses on his behalf, three eminently qualified medical specialists who had considerable training and experience with gas gangrene. Again the plaintiff was on several occasions prevented from obtaining their opinions on cross-examination.

Within the limitation that cross-examination of a witness (as distinguished from a party) should not exceed the scope of the direct examination, we find no valid reason why an expert witness cannot be cross-examined as to his expert knowledge and opinion concerning subjects on which he expressed his opinion or stated his expert knowledge in the direct examination.

In *Harweger v. Wilcox* (1962), 16 Wis. (2d) 526, 114 N. W. (2d) 818, in considering the problem of cross-examination of expert witnesses, we quoted 2 Jones, Evidence (5th ed.), p. 831, sec. 437, as follows, p. 533:

" 'CROSS-EXAMINATION OF EXPERT WITNESSES.—. . . Great latitude is ordinarily the rule in the cross-examination of such witnesses. The party cross-examining an expert witness is not confined to the theory on which the adversary has conducted his examination; he may go into details, and may put the case before the expert in all its phases.

" 'The witness may be required to answer hypothetical questions which present the facts claimed to constitute the case or the defense of the party examining him; and the hypothetical questions may, subject to the reasonable discretion of the court, assume any facts that are relevant to the case and of which there is evidence.' "

While we recognize the trial court has some discretion in the scope and extent of the cross-examination of a witness, we deem it was error to prohibit cross-examination of the expert witnesses, including the defendant, upon the sole ground that it called for an opinion of the witness.

We have concluded it was error to restrict the cross-examination of the defendant and his expert witness so as to prohibit their opinions as to the quality of the care and treatment rendered by the defendant to the plaintiff.

We cannot, however, grant a new trial unless we determine the error was prejudicial.

Sec. 274.37, Stats., provides:

"JUDGMENTS; APPLICATION TO REVERSE OR SET ASIDE; NEW TRIAL; REVERSIBLE ERRORS. No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

This action was prepared and tried upon the theory that Dr. Brah was negligent in preoperative examination and preparation of the plaintiff prior to the amputation above the wrist on May 11, 1959, and negligent as to postoperative care and treatment after this operation.

The plaintiff entered the hospital on May 11th voluntarily upon his own decision (together with the agreement of the defendant) and presented himself for an amputation above the wrist. At that time and for many weeks past, what remained of his right hand was healed with no infection nor openings, although the hand was somewhat discolored, numb, and painful. Until the trial, it had been the plaintiff's theory that he was infected with gas gangrene spores at the hospital during or after the operation of May 11th. Because of the statute of limitations and the status of the pleadings, the trial court rightfully limited the proof of negligence to the events occurring on and after May 11th.

At the trial the plaintiff offered the testimony of Dr. John Martin Johnson. Dr. Johnson testified at length and stated as an expert witness that Dr. Brah did not use the requisite professional care and skill in his preoperative examination and preparation and in the postoperative care and treatment. Dr. Brah and three medical experts testified in effect that gas gangrene spores could come from a variety of sources and that both the preoperative and postoperative care given by Dr. Brah was done in a generally accepted method used by surgeons in the community of Milwaukee. They also testified that there was not a delay in diagnosing the gas gangrene and that it was imperative that the arm be amputated as close to the shoulder as it was in order to save the plaintiff's life.

The trial court submitted a verdict which inquired as to whether Dr. Brah failed to exercise the degree of care and skill which surgeons in good standing and in the same school of practice in the same or similar localities as Milwaukee do. Two questions, each with three subdivisions, encompassing all of the claimed acts of negligence or malpractice as testified to by Dr. Johnson were submitted to the jury. As to all six subdivisions the jury found that Dr. Brah did not fail to use the required degree of care and skill.

The plaintiff does not argue that evidence in the record does not support the verdict. From our review of the entire record it does not appear that the erroneous evidentiary rulings affected the substantial rights of the plaintiff. The plaintiff was given full opportunity to present his own evidence as limited by the pleadings. The evidence clearly supports the verdict. It does not appear to us that had the plaintiff not been erroneously restricted in his cross-examination of the defendant and his witnesses as to their expert opinions that a different result would have followed.[4] In our view the erroneous evidentiary rulings

---

[4] *Greene v. Agnew* (1915), 160 Wis. 224, 151 N. W. 268.

were not prejudicial and a new trial cannot be ordered on this assignment of error.

The plaintiff contends it was error not to submit an instruction on *res ipsa loquitur* in response to his oral request. First, we note that the plaintiff did not make a written request for the instruction. Sec. 270.21, Stats., provides in part: "Requests for instructions to the jury must be submitted in writing before the argument to the jury is begun, unless in the opinion of the trial judge, special circumstances excuse failure to so submit such requests."

The plaintiff has not shown sufficient special circumstances which would make the trial court's determination an abuse of discretion.[5]

Even if a proper request had been made for the instruction, this is not a proper case for the application of the doctrine of *res ipsa loquitur*.

Our recent opinion in *Fehrman v. Smirl* (1963), 20 Wis. (2d) 1, 121 N. W. (2d) 255, 122 N. W. (2d) 439, discusses the applicability of the doctrine of *res ipsa loquitur* in medical malpractice cases at length. In the *Fehrman Case* we recognized that there are situations in medical malpractice cases where the doctrine may be properly applied.

"The general rule is that the doctrine of *res ipsa loquitur* may be invoked in medical malpractice actions only where a layman is able to say as a matter of common knowledge that the consequences of the professional treatment are not those which ordinarily result if due care is exercised, and that the doctrine is not applicable when expert medical testimony is required to show negligence on the part of the practitioner. . . ." (p. 22) (Footnotes omitted.)

In addition to this general rule the *Fehrman Case* holds that the doctrine of *res ipsa loquitur* may permit an inference of a failure to use requisite care and skill where

---

[5] *Ahola v. Sincock* (1959), 6 Wis. (2d) 332, 94 N. W. (2d) 566.

the expert medical testimony establishes that the injury or disease is of a kind that does not ordinarily occur if the surgeon exercises proper care and skill.

Laymen cannot infer negligence from the fact of contraction of a gas gangrene infection. The proof establishes that gas gangrene infection is fairly rare. We have, however, specifically rejected the "rarity" test as a basis for allowing lay juries to infer negligence. (See *McManus v. Donlin* (1964), 23 Wis. (2d) 289, 301, 127 N. W. (2d) 22.)

From the extensive medical testimony in the record it is apparent that a gas gangrene infection may or may not be the result of negligence or improper care and skill.

In this instance the plaintiff attempted to prove several specific acts of Dr. Brah that did not meet the requisite degree of professional care and skill. The jury found that Dr. Brah did not fail to use the requisite care and skill. This is not a case for the application of the doctrine of *res ipsa loquitur*.

*By the Court.*—Judgment affirmed.