BAILEY and husband, Appellants, v. STURM, Defendant: PITTS, Respondent.

*No. 86. Argued April 30, 1973.—Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 653.)

90

For the appellants there were briefs by *Campbell, Brennan, Steil & Ryan, S. C.,* attorneys, and *James E. Brennan* of counsel, all of Janesville, and oral argument by *James E. Brennan.*

For the respondent there was a brief by *Stafford, Rosenbaum, Rieser & Hansen* of Madison, and oral argument by *Willard S. Stafford.*

ROBERT W. HANSEN, J. As the trial court stated, the issues raised are whether the care and treatment of Dr. Pitts was negligent and whether the care and treatment given was the cause of plaintiff's loss of vision in one eye. The trial court left the jury's finding of negligence stand, and Dr. Pitts claims the trial court should have changed the jury answer on his negligence from "Yes" to "No." The trial court did change the jury's answer as to causation from "Yes" to "No," and the plaintiffs claim that it should not have done so. We will take up the matter of causation and the question as to negligence.

However, initially, the impact of the statute of limitations [1] upon this case must be noted.

*Statute of limitations.*

The complaint in this action alleged (1) that Dr. Sturm and Dr. Pitts during the performance of the surgical procedure negligently severed plaintiff's optic nerve; and (2) that they were negligent in the "care and treatment" of plaintiff in negligently severing the optic nerve, negligently treating and diagnosing the source of her difficulty by failing to have the "tumor" examined by a pathologist prior to severing the nerve, negligently failing to properly treat the condition which they discovered during the operation in that they removed material encapsulating the optic nerve, and negligently failing to consult with the dentist involved. It is clear that the specific allegations, while referring to "care and treatment," deal solely with the operative procedures involved in severing the optic nerve. It must be concluded that the complaint alleged negligence solely in the performance of the operation by defendants on December 19, 1966. [2]

While the complaint did not allege any claim of negligence based on the care and treatment of plaintiff by Dr. Tegtmeyer prior to the surgery, much evidence was introduced at the trial, over objection, as to the relationship between Dr. Tegtmeyer and defendant, Dr. Pitts. (It appears they shared offices, filed their records in the same place, used letterheads listing both names, and

[1] Sec. 893.205 (1), Stats.

[2] *See: Shurpit v. Brah* (1966), 30 Wis. 2d 388, 395, 141 N. W. 2d 266, where this court held that because the specific acts of negligence alleged by the plaintiff ". . . all go to the care and treatment after May 11, 1959. . . the scope of the pleadings limits the issue of negligence to acts of the defendant on and after May 11, 1959."

made billings with both doctors listed.) The effort to establish a partnership relationship clearly was intended to make Dr. Pitts liable for negligence in diagnosis or treatment on the part of his office associate, Dr. Tegt-meyer.[3] The trial court found that the doctrine of *respondeat superior* did not apply,[4] denying plaintiff's motion to amend the amended complaint so as to raise the issue of negligence in Dr. Tegtmeyer's earlier care and treatment and the imputation of such negligence to Dr. Pitts. As an additional reason for denying such motion, the trial court held it would be error to amend pleadings to resurrect an action barred by the statute of limitations and to which defendants had no opportunity to demur. Under the *Shurpit Case*, it would be error.[5] The complaint here was carefully drafted so that no questions as to the applicability of the three-year statute of limita-

---

[3] *See:* Annot. (1962), *Liability of one physician or surgeon for malpractice of another,* 85 A. L. R. 2d 889, 907, 908, sec. 11; 61 Am. Jur. 2d, *Physicians, Surgeons, etc.,* pp. 294, 295, sec. 166; 70 C. J. S., *Physicians and Surgeons,* pp. 977, 978, sec. 54 (c).

[4] *See: Mayer v. Hipke* (1924), 183 Wis. 382, 197 N. W. 333, where this court held that a family physician who did not hold himself out as a surgeon but was merely present in an operation in his capacity as family physician, could not be held liable for any negligence of the surgeon. *See also: Morrill v. Komasinski* (1950), 256 Wis. 417, 41 N. W. 2d 620, holding that where a family physician assisted in the diagnosis and continued in active charge of the case after the specialist had acted, he was jointly liable; *Heimlich v. Harvey* (1949), 255 Wis. 471, 39 N. W. 2d 394, holding a doctor responsible for the acts of another doctor whom he hired on a salary plus commission basis and whose acts he acknowledged as his own; and *Fehrman v. Smirl* (1964), 25 Wis. 2d 645, 131 N. W. 2d 314, holding a doctor who actually assisted another doctor in performing an operation to be jointly liable for negligent performance of the surgery.

[5] *Shurpit v. Brah, supra,* at page 396, stating, ". . . in fact to permit an amendment in view of the objections based upon the statute of limitations so as to reach beyond three years from the date of the commencement of the action would have been error."

tions [6] would arise in this action commenced against defendants-surgeons on December 12, 1969. It was no abuse of discretion to deny a motion to broaden the scope of inquiry after the statutorily required [7] objection by way of answer or demurrer could not be made.

*Question as to causation.*

On the issue as to causation, the key question is whether anything that Dr. Pitts did do or did not do was or could have been a cause of plaintiff's loss of vision in one eye. On this issue, dates or points in time become important. Here is how the trial court set them forth in its opinion:

"Mrs. Bailey did not notice that the vision in her one eye was gone until Dr. Tegtmeyer told her so after he examined her in the hospital on December 10, 1966. How long previously it had been gone is not known. . . .

"Dr. Pitts was called in and examined her for the first time on December 11, 1966, and confirmed Dr. Tegtmeyer's findings of December 10, 1966.

"He called in Dr. Sturm, a neuro-ophthalmologist, who examined Mrs. Bailey on December 12, 1966, confirmed that she was blind in her affected eye . . . .

"[S]urgery was done on December 19, 1966, at which time the optic nerve was removed. . . .

"The evidence is clear and undisputed that, if blindness persists for 24 to 48 hours, it is permanent.

". . . At the time she was operated she was blind in the eye irretrievably so and this is probably also true at

[6] *See: Peterson v. Roloff* (1973), 57 Wis. 2d 1, 203 N. W. 2d 699; *Olson v. St. Croix Valley Memorial Hospital* (1972), 55 Wis. 2d 628, 201 N. W. 2d 63; *Holifield v. Setco Industries, Inc.* (1969), 42 Wis. 2d 750, 168 N. W. 2d 177.

[7] Sec. 893.01, Stats., requiring: ". . . the objection that the action was not commenced within the time limited can only be taken by answer or demurrer in proper cases." *See also: Mead v. Ringling* (1954), 266 Wis. 523, 64 N. W. 2d 222, 65 N. W. 2d 35, on waiver of right to raise issue as to applicability of statute of limitations.

least by December 12, 1966. The evidence does not show how long before December 10, 1966, she was blind, but it was undisputed she was blind on that day. . . ."

Despite this sequence of events or situations, plaintiffs see a jury question as to causation created by the testimony of their expert witness, Dr. Suckle, who testified that, if surgery had been performed on December 10, 1966, and the nature of the disorder thus discovered, there "is a good chance that her eyesight may have been saved," adding that there is "no guarantee that that would have saved the eye." Of the witness' testimony, the only evidence addressed to any relationship between the loss of vision and any claimed negligence on the part of the defendants-surgeons, the trial court held: ". . . We believe that the tenor of Dr. Suckle's testimony leaves the element of causation in the realm of possibility or speculation, rather than that area of medical probability or reasonable certainty. His failure to address himself expressly to reasonable certainty or probability we believe was intentional, as Dr. Suckle is an old campaigner in the courtroom. We are of the opinion that the proof of causation leaves the evidence on that subject far short of that required to sustain the verdict against Dr. Pitts." [8]

Upholding the trial court's action in changing the jury answer on causation from "Yes" to "No," we agree with the trial court's statement in its opinion: "It is perfectly obvious that there is no causal connection between the loss of sight, which had occurred by December 10, 1966, and the removal of the optic nerve on December 19, 1966, because the sight had been lost beyond recovery long before the operation. . . ."

[8] Citing *Pucci v. Rausch* (1971), 51 Wis. 2d 513, 187 N. W. 2d 138, and cases cited; 49 Marq. L. Rev. (1966), 657, 669, *et seq.*

*Question as to negligence.*

With the trial court's ruling on lack of causation upheld, the sole remaining issue [9] has no legal effect on the outcome and no financial impact upon either plaintiffs or defendant. It is related, however, to the professional reputation or standing of the defendant-surgeon. Since it was properly raised by notice of review, it will be taken up. That issue is whether the trial court should also have changed from "Yes" to "No" the jury verdict answer that the defendant, Dr. Pitts, was negligent in his care and treatment of the plaintiff, Mary Bailey.

Under the allegations of the amended complaint, the evidence must be examined as to any negligence of Dr. Pitts in surgical or operative procedures used in the removal of the pseudotumor and severing of the optic nerve. The evidence to be examined must be related to acts or nonacts of the defendant on or after December 11, 1966, the date on which Dr. Pitts first examined the plaintiff. Evidence that the plaintiff's sight in one eye might have been saved if the operation had been performed on December 10, 1966, or some earlier date, would not establish negligence on the part of Dr. Pitts since he first examined the plaintiff on December 11, 1966.

As to any claim of negligence in the surgical procedures followed by Drs. Pitts and Sturm, the plaintiffs' reply brief states: "The plaintiffs originally alleged negligence regarding surgical aspects of the case but the jury absolved the defendants on that point and there is no contest on that aspect of the jury finding. Otherwise there would have been an appeal from the decision of the jury absolving Dr. Sturm." This is less an abandonment of a basis for recovery than a recognition that

---

[9] Also raised on this appeal is the issue of the adequacy of the jury's award of $15,000 damages. Affirming the trial court's judgment directing dismissal of plaintiffs' cause of action makes it unnecessary to review the reasonableness of the jury's award of damages in this case.

the jury verdict found no fault with the surgical procedures followed by the two surgeons in their jointly conducted operation. With the initial diagnosis, referral to an ophthalmologist and scheduling of the hospitalization beyond the scope of the amended complaint as to Dr. Pitts, there remains solely the question of his failure to administer drugs on December 11, 1966, the date on which he first saw or examined the plaintiff.

So the trial court found, stating in its opinion that: "Thus the only real ground for any negligence was the failure to try drugs." The basis for finding the failure to prescribe drugs, particularly steroids, on December 11, 1966, would derive from the testimony of plaintiffs' medical witness, Dr. Suckle, that proper medical procedure required the administration of steroids when proptosis, paralysis, and continued loss of vision appeared. However, such testimony is directly linked to the doctor's testimony that, as long as there was a chance that plaintiff's loss of vision could be corrected, not only administering drugs, but earlier calling of an ophthalmologist, an earlier taking of a biopsy, and earlier placement of the plaintiff in the hospital as an emergency case were indicated. As he stated, "Now, that is no guarantee that that would save the eye nerve but at least she should have that chance." At the latest, the reference, as the doctor himself stated it, was to December 10, 1966. Asked if plaintiff's sight in the left eye would have been saved if the surgical procedure was performed on December 10, he responded, "I believe that there is a good chance that her eyesight may have been saved if the biopsy had been taken at that time and she had been treated with medication." But Dr. Pitts did not see the patient until December 11th, and with the evidence "undisputed that, if blindness persists for 24 to 48 hours, it is permanent," the testimony as to what might or should have been done a day before the defendant saw the patient is not a sufficient basis for a finding of

negligence on his part. There is no evidence that the administering of drugs in an attempt to save eyesight is indicated where the sight in the eye has been irretrievably lost, and that failure to administer drugs, on December 11, 1966, was or could be held to be negligent. So we hold the trial court should have changed the jury verdict as to Dr. Pitts' negligence from "Yes" to "No."

*By the Court.*—Judgment modified to change the jury verdict answer as to negligence on the part of Dr. Pitts from "Yes" to "No." Judgment, as modified, affirmed.