Timothy M. FINN, Plaintiff-Respondent and Cross-Appellant,

v.

Francis M. SCHAMMEL, M.D., Walter D. Moritz, M.D., Stoughton Hospital Association and Wisconsin Patients Compensation Fund, Defendants-Appellants and Cross-Respondents,

Frank E. NICHOLS, M.D., and Orthopaedic Associates, Ltd., Defendants.†

Court of Appeals

*No. 85–0858. Submitted on briefs October 17, 1986.—Decided July 23, 1987.*

(Also reported in 412 N.W.2d 147.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendants-appellants and cross-respondents the cause was submitted on the briefs of *Curtis C. Swanson* and *Vicky M. Phillips* and *Brynelson, Herrick, Gehl & Bucaida* of Madison.

For the defendant-appellant and cross-respondent Walter D. Moritz, M.D., the cause was submitted on

the briefs of *Steven J. Caulum* and *John Possi* and *Bell, Metzner & Gierhart, S.C.,* of Madison.

For the plaintiff-respondent and cross-appellant the cause was submitted on the briefs of *Joseph F. Owens* and *Debbie G. Garten* and *Murphy & Desmond, S.C.* of Madison.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J. This is an action by Timothy Finn for medical malpractice and for tortious interference with a relationship. Finn prevailed on his malpractice claim against Dr. Walter Moritz, Dr. Francis Schammel, Stoughton Hospital Association, and Wisconsin Patients Compensation Fund, and they appeal from the $135,000 judgment in Finn's favor. Finn also sought damages from Dr. Frank Nichols for having tortiously interfered with Finn's relationship with his medical witness. The trial court dismissed Finn's interference claim and he cross-appeals.

Finn's malpractice claim arises out of a failure to reimplant four fingers he lost in an industrial accident. The principal issue regarding that claim is whether he can recover for a "lost chance" for a successful reimplantation, in spite of the jury's finding on a special fact question that reimplantation would not have been successful. We conclude he cannot recover in this action. We therefore reverse the judgment.

The issues in Finn's cross appeal are whether the trial court erred by (1) dismissing Finn's claim against Nichols for breach of a fiduciary relationship and for tortious interference with a contract, (2) allowing no reference to a threat Dr. Nichols made to an expert witness for Finn, (3) taxing costs and fees, and (4) failing to grant a partial retrial on the issue of Finn's

lost earning capacity. We find no error and affirm that part of the judgment dismissing his complaint against Nichols and the allowance of costs.

## I.
## DAMAGES FOR LOST CHANCE

On August 15, 1978, a machine press crushed and severed three fingers on Finn's right hand and partially severed the little finger. Within minutes after the accident, Finn went to Stoughton Hospital. The emergency room nurse called Dr. Schammel, who arrived within a few minutes, examined Finn and then left. No attempt was made to retrieve the severed fingers from the press. The fingers remained in the press overnight and became necrotic. The next morning Dr. Nichols removed tissue from Finn's hand and amputated the little finger and a remaining part of another. Dr. Moritz later performed more surgery on Finn's hand. Finn's right hand now has only an intact thumb and part of the index finger.

The theory of Finn's action is that defendants negligently failed to do certain acts necessary to the reimplantation of his fingers. The case was tried to a jury. From Finn's perspective, the evidence at the trial showed that the defendants negligently treated him in that he, and his amputated fingers, were never properly evaluated for reimplantation by a knowledgeable professional in a timely fashion. The primary defense contention was not that Finn had been appropriately treated but that his fingers had been so badly damaged that the negligent treatment was irrelevant.

At the conclusion of the testimony the parties agreed that in addition to questions on negligence and

causation, the jury should answer the following special fact question:

> Question 10: Do you find to a reasonable certainty that a reimplantation of one or more of Timothy M. Finn's fingers would have been successful?

After retiring, the jury inquired of the trial court:

> Question 10: Do we have to have a 100% or ?% to this answer

The trial court responded that a yes or no answer was required and referred the jury to the burden of proof instruction.

Finn's counsel then asked that the following question be submitted as a companion to Question #10:

> What do you find to a reasonable probability by the greater weight of the credible evidence to have been the likelihood expressed in percentage, of successful reimplantation of one or more of Timothy Finn's fingers?

The trial court refused to submit the question.

The jury found that Dr. Nichols was not negligent but that Dr. Schammel, Dr. Moritz and the hospital were causally negligent and apportioned the negligence 20% to Schammel, 75% to Moritz and 5% to the hospital. The jury answered Question 10 "no," finding to a reasonable certainty that reimplantation would not have been successful. It found no damages for Finn's past loss of earnings or future loss in earning capacity but found $135,000 damages for his past and future mental and emotional distress.

On motions after verdict, the trial court struck Question 10 and the jury's answer and directed that judgment for $135,000 be entered on the verdict. The court reasoned that plaintiff had a claim based on negligence regardless of his ability to establish the certainty of a successful reimplantation of his fingers. Question 10, in the court's view, was confusing because it provided no measure of probability for the jury to use when determining the likelihood of a successful reimplant. The court said that the jury's answer to that question was meaningless in view of its other answers and that the ambiguity of Question 10 confused the rest of the verdict.

The trial court concluded that the presence of Question 10 did not involve the jury's findings regarding the absence of Finn's wage loss or any other finding. The court concluded that credible evidence supported the finding that Finn lost no earnings and had no future loss of earning capacity.

The trial court also concluded that credible evidence supported the finding that Finn suffered compensable damages for mental anguish and mental impairment and physical impairment unrelated to a wage loss. The court found no inconsistency between that award and the jury's answer to Question 10, since the jury might have thought, for example, that a 50% chance of reimplantation failed to meet the reasonable certainty test, the question having been put in those terms. The court said that sufficient evidence supported the jury's award for Finn's loss of a substantial chance of enjoying a successful reimplantation of one or more of his fingers.

The trial court concluded that such a loss is compensable. The court said that the test of cause-in-fact in Wisconsin is whether a defendant's negligence

was a substantial factor in contributing to the harm, and, under that test, the plaintiff need not prove his case beyond a reasonable doubt. It said that defendants cannot defend their failure to take proper precautions by the claim that the failure would not have made a difference, citing *Johnson v. Misericordia Community Hosp.,* 97 Wis. 2d 521, 294 N.W.2d 501 (Ct. App. 1980), unless that failure is not even a perceptible factor in bringing the injury about.

The trial court concluded that the $135,000 award sufficiently compensated Finn "at a minimum" for the chance he lost due to defendants' negligence to have one or more of his fingers reimplanted. The court therefore entered judgment for that amount.

Defendants contend that Question 10, the special fact question, was necessary because it dealt with the major issue in the case: whether one or more of Finn's fingers could have been successfully reimplanted. They contend that the trial court abused its discretion when it struck the question, since it was unambiguous and could be answered yes or no. In their view if the special fact question was inconsistent with the damage question, the court should have struck the answer to the damage question. Defendants assert, moreover, that a lost chance is not a compensable injury in Wisconsin. Finally, defendants contend that if any evidence supports an award for pain and suffering, then the award must be minimal and limited to a period during which there was a delay in surgery. They contend that no evidence in the record relates to pain and suffering or emotional distress that Finn would have suffered by a delay in surgery.

Finn contends that because a juror could be convinced to a reasonable certainty that at least a 50% chance of surgical success had existed, the special

fact question asked for an answer to a degree of finality which was not possible. Finn contends that a loss of chance is compensable in a medical malpractice case and that the $135,000 award is supported by evidence of record.

No Wisconsin case has been called to our attention holding whether a loss of chance is compensable, in and of itself. The trial court cited none and Finn cites none.

Although defendants assert that the law is "clear" that a lost chance is not compensable, they rely only on *Bailey v. Sturm,* 59 Wis. 2d 87, 207 N.W.2d 653 (1973), and *Lobermeier v. General Tel. Co. of Wisconsin,* 119 Wis. 2d 129, 349 N.W.2d 466 (1984), both of which dealt with sufficiency of evidence issues. The *Bailey* court held that the testimony supporting a claimed lost chance to save the plaintiff's eyesight left the element of causation in the realm of possibility or speculation rather than medical probability or reasonable certainty. 59 Wis. 2d at 95, 207 N.W.2d at 657. The *Lobermeier* court held that the plaintiff's loss of earnings in broadcast journalism was speculative, since there was no evidence to establish to a reasonable certainty that such a career was possible. 119 Wis. 2d at 151–52, 349 N.W.2d at 477.

Neither *Bailey* nor *Lobermeier* suggests that recovery may be had for the value of a lost chance in and of itself. Both decisions assume that a plaintiff recovers his damages—all of his damages, not merely the value of a lost chance—if he can prove to a reasonable probability or certainty that success would have resulted. That is to say, if the plaintiff cannot prove to a reasonable certainty that success would have resulted but for the defendant's negligence, the plaintiff recovers nothing rather than recovering the value of

the lost chance, whether a 10% chance or a 95% chance.

The *Bailey* and *Lobermeier* decisions are consistent with what a leading and frequently-cited article has described as an "all-or-nothing approach." King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences,* 90 Yale L.J. 1353, 1356 (1981). Under that approach, which most courts have adopted, the plaintiff receives nothing unless a causal connection between the negligence and the loss is established under the applicable standard of proof. According to King, "Only a few personal injury cases have recognized, even implicitly, the loss of a chance as a compensable interest *valued in its own right." Id.* at 1365–66 (emphasis added).

As King notes, the all-or-nothing approach enhances the importance of the standard of proof, since that standard determines the degree of certainty which the party bearing the burden of proof must meet. 90 Yale L.J. at 1366. If a "preponderance of the evidence" or "more likely than not" or "probability" standard is applied, no compensation is allowed for a loss not having a better-than-even chance. *Id.* at 1367–70. The traditional approach not only treats chance in all-or-nothing terms, but, under the prevailing view, denies recovery for not-better-than-even chances. *Id.* at 1370.[1]

---

[1]King criticizes the all-or-nothing approach. In King's view, the standard of proof issue has prevented analysis of the real problem, which is not the standard of proof but the interest for which redress is sought. 90 Yale L.J. at 1366. King asserts that chance itself is an interest worthy of redress, and therefore the problem is to develop an appropriate method of assigning a value to a particular lost chance. *Id.* at 1381. He asserts that valuing

This case was tried and argued in terms of the all-or-nothing approach under which the burden of proof denies recovery for loss of a less-than-even chance. We therefore need not decide whether Wisconsin recognizes a cause of action for loss of a pure chance, by which the plaintiff recovers only the value of the lost chance, whether it be less-than-even or better-than-even.

The all-or-nothing approach inheres in the court's instructions to the jury, to which the parties stipulated. The trial court told the jurors that before they could find that any person's negligence was a cause of any resulting harm, they must find that his negligence had a substantial influence in producing the harm. The jurors were also told that the burden of proof rests upon the party contending that the answer to a question should be "yes," and that the burden was to satisfy the jurors to a reasonable certainty by the greater weight of the credible evidence that "yes" should be their answer.

The all-or-nothing approach inheres in Question 10, which asked the jury to find whether to a "reasonable certainty" the implantation of one or more of Finn's fingers would have been successful. The jury was also instructed that while the experts had variously described their opinions as being within "a reasonable certainty" or "a reasonable probability," those terms are equivalent. When deciding how to answer Question 10, the jurors must have done so in

chance itself is feasible. *Id.* at 1387. In his view, the all-or-nothing approach to the loss of a chance should be abandoned for valuation purposes. He urges that rules be adopted which recognize that the destruction of a chance, including a less-than-even chance, is a compensable loss and should be appropriately valued. *Id.* at 1396–97.

terms of probabilities, consistent with the "all-or-nothing" approach.

The all-or-nothing approach inheres in the instructions on damages. The jurors were told to allow "only such damages as you are satisfied to a reasonable certainty from the greater weight of the credible evidence naturally resulted from the treatment by the defendants," with no reference whatever to valuing the loss of chance itself. Nothing in the instructions suggested that the value of a lost chance should be proportionate to the chance itself. Nothing in the instructions even implied, for example, that if the chance for successful reimplantation was sixty percent, then the loss of that chance must have a lower value than the loss of a ninety percent chance.

Consistent with the all-or-nothing approach, the parties argued to the jury that the critical issue was whether Finn's fingers could have been reimplanted and told the jurors that this was the reason for the special fact question. True, Finn's counsel had asked his experts for their opinions as to the percentage likelihood of success had reimplantation been attempted, and they testified to chances of success ranging from thirty percent to eighty percent. Finn's counsel, however, argued to the jury that whether Finn's fingers could have been reimplanted "is a crucial issue, and using that reasonable certainty standard and weighing what is more likely than not in applying it, I don't think there is any question on how you will answer that question." In his rebuttal argument, Finn's counsel said the matter was a battle of experts "on the very critical issue ... whether those fingers were reimplantable."

Given this background, the trial court correctly refused to give the instruction Finn requested after

the jurors inquired whether they must give a "100% or ?%" answer to Question 10. The percentage likelihood of success for reimplantation is irrelevant to the all-or-nothing approach on which the case was tried. The instructions and the argument of counsel furnished no connection between the answer to the additional question and Finn's damages. The jury was not told what to do with the answer. The trial court could have done nothing with the jury's percentage answer since the jury's findings on damages did not put value on a lost chance.

The trial court erred when it attempted to reconstruct a lost chance award from the evidence and the jury's findings. Whether or not the evidence supported an award for the loss of a substantial chance for reimplantation, the jury found that the chance did not rise to a reasonable certainty, which they were instructed was the equivalent of a reasonable probability. Credible evidence existed from which the jury could have made that determination. As Finn's counsel acknowledged before the jury, the case was a battle of experts. The jury resolved the issue in favor of the defendant's experts.

The trial court's conclusion that the damage award was sufficient to compensate the plaintiff, "at a minimum," for the chances he lost for an implantation cannot stand. Assuming the jury followed its instructions, the $135,000 award included all of the plaintiff's damages for past and future mental and emotional distress, not some amount for a lost chance, which, the jury found, had not been established to a reasonable certainty. The trial court's conclusion that the award is sufficient "at a minimum" to compensate him for the chance that he lost has no basis for the

additional reason that the jury did not (rightly, under the circumstances) determine the percentage likelihood of success. Nor did the court attempt to do so. Consequently, the court could not place a value on the lost chance.

Our conclusions leave the verdict with inconsistent answers. On the one hand, the jury's answer to Question 10, is that reimplantation would not, to a reasonable medical certainty, have been successful. On the other hand, the jury found that Drs. Schammel and Moritz were causally negligent and apportioned the negligence between those defendants and found that Finn's damages were $135,000.

If, as here, one answer completely determines liability, then all other answers inconsistent with it must be struck. *Dahl v. K-Mart,* 46 Wis. 2d 605, 610, 176 N.W.2d 342, 344–45 (1970). We will therefore direct the trial court to strike the jury's answers regarding the causal negligence of Drs. Schammel and Moritz and the hospital and to strike the $135,000 damage award and to dismiss the complaint.

## II.
### FINN'S CLAIM AGAINST DR. NICHOLS

#### A. *Breach of Fiduciary Duty*

As a separate claim against Dr. Nichols, Finn's complaint alleged that during a recess in the patient's compensation panel proceedings, Nichols accosted Dr. Segal, who was testifying on behalf of Finn, and threatened Segal with reprisals if he returned to Wisconsin in connection with the claim. The gravamen of the claim is that Nichols' acts violated Finn's

rights as Nichols' former patient and interfered with Finn's malpractice claim.

At the trial Dr. Segal testified in an offer of proof that Finn's attorney had contacted him to testify for Finn at the patient's compensation panel hearing on Finn's claim against Drs. Moritz, Nichols and Schammel. His testimony at the hearing was critical of defendants Drs. Moritz and Nichols. During a recess, Dr. Nichols said to Dr. Segal, "We don't like your kind up here. You better watch out if you choose to come into this state again or do anything here."

Finn contends that because he had been Dr. Nichols' patient, Nichols owed him a duty of loyalty, trust and confidence. He contends that Nichols' threatening Dr. Segal violated Nichols' fiduciary duty to Finn. We reject the argument.

We assume without deciding that Dr. Nichols owed a fiduciary duty to Finn while the doctor/patient relationship existed. *Lilly v. Commissioner of Internal Revenue*, 188 F.2d 269 (1951), *rev'd on other grounds*, 343 U.S. 90, (1952). We also assume, as held in *Hammonds v. Aetna Casualty & Surety Company*, 243 F. Supp. 793, 799 (N.D. Ohio 1965), that a doctor's duty to his patient requires him to testify on behalf of his patient even in a proceeding in which the treatment which the doctor rendered is challenged.

The fact is, however, that Dr. Nichols testified at the patients compensation panel hearing and Dr. Segal testified both at that hearing and at Finn's trial. The record contains no evidence that Nichols' threat in any way affected Segal's testimony on behalf of Finn. Consequently, if Nichols' threat violated a fiduciary duty he owed to Finn, no damage resulted

from it. The claim was properly dismissed, insofar as it rested on violation of a fiduciary duty.

■

Finn contends that he is nevertheless entitled to recover because Nichols' breach of a fiduciary duty resulted in severe emotional distress to Finn. We disagree. In Wisconsin, one who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from it. *Alsteen v. Gehl,* 21 Wis. 2d 349, 358, 124 N.W.2d 312, 317 (1963).

Whether undisputed conduct is extreme and outrageous may be determined by an appellate court and is a question of law. *Alsteen,* 21 Wis. 2d at 361, 124 N.W.2d at 318–19. The *Alsteen* court said that for conduct to be extreme and outrageous, "The average member of the community must regard the defendant's conduct *in relation to the plaintiff,* as being a complete denial of the plaintiff's dignity as a person. ... [T]he requirement of extreme and outrageous conduct as a condition of recovery will avoid litigation 'in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law.'" 21 Wis. 2d at 359–60, 124 N.W.2d at 318. (Emphasis added, citation omitted.)

■

Whatever the relationship of Dr. Nichols' conduct to Dr. Segal, Nichols' comment was not extreme and outrageous in relation to Finn. Accordingly, Finn's separate claim against Nichols fails to satisfy the "extreme and outrageous" element for recovery for severe emotional distress. We conclude that the trial court did not err in dismissing the complaint, insofar

as it was based upon a claimed violation of Nichols' fiduciary duty to Finn.

B. *Interference with Contract*

█

We turn to the theory that Nichols' conduct interfered with Finn's contract with Segal. Wisconsin recognizes that interference with a contractual relationship is a tort. *Augustine v. Anti-Defamation Lg. B'nai B'rith,* 75 Wis. 2d 207, 249 N.W.2d 547 (1977). The *Augustine* court indicated that it would adopt the rule now embraced in *Restatement (Second) of Torts* sec. 766 (1969), which makes tortious certain conduct "induc[ing] or otherwise intentionally caus[ing] a third person not to perform a contract ...."

█

No evidence exists that Nichols' threats induced or caused Dr. Segal not to perform his contract with Finn. We therefore conclude the trial court did not err in dismissing Finn's claim based upon the claimed threat to Dr. Segal, whether viewed as a violation of a fiduciary duty or as an interference with a contract.

C. *Evidentiary Ruling*

Finn contends that the trial court nevertheless should have admitted evidence of Dr. Nichols' threats, on grounds that expressions by a party charged with wrongdoing which are inconsistent with innocence are admissible against such a party. Finn furnishes citations to that effect, including *Meyer v. McDonnell,* 392 A.2d 1129 (Md. App. 1978). The *Meyer* court held admissible evidence of threat by a physician charged with malpractice to transcribe the testimony of the plaintiff's witnesses and disseminate it to their medical societies. The *Meyer* court reasoned that the threat tended to show the physician was conscious that his case was weak.

Before ruling that Dr. Segal could not testify to the threat, the trial court was told that a codefendant, Dr. Schammel, was present when the threat was made and Dr. Segal's testimony at the patients compensation panel hearing was directed against Dr. Schammel. The court held the prejudice to Dr. Schammel which would result from admitting the evidence far outweighed its probative value.

Evidentiary rulings are discretionary. *State v. Alsteen,* 108 Wis. 2d 723, 727, 324 N.W.2d 426, 428 (1982). The issue on appeal is whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of the record. *Id.* Section 904.03, Stats., specifically allows a trial court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. We consider that the trial court employed that principle when excluding the evidence of the threat. The trial court exercised its discretion using an accepted legal standard on the basis of the facts represented to it, and that factual basis is uncontested. The trial court did not abuse its discretion.

### III.
### REMAINING ISSUES

In view of our disposition, it is unnecessary for us to decide whether the trial court should have granted Finn a partial retrial on the issue of his lost earning capacity.

The same is true regarding Finn's cross appeal from the trial court's treatment of costs. Finn's argument is predicated on sec. 655.19(1), Stats. 1981.

That statute provides that in the case of a trial after a formal patient's compensation panel hearing, the court may award actual costs and a reasonable attorney's fee "to the prevailing party." Because Finn has not prevailed, this issue is moot.

*By the Court.*—Judgment reversed and matter remanded with directions for further proceedings consistent with this opinion.