Loser, Respondent, vs. Libal and another, Appellants.

*March 8—April 5, 1955.*

For the appellants there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *John C. Whitney*.

For the respondent there was a brief by *Robert D. Murphy* of Marinette, and *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Mr. Murphy*.

BROADFOOT, J.    The defendants now contend that the trial court erred in refusing to find the plaintiff negligent as a matter of law with respect to his speed. This contention is based upon inconsistent statements made by the plaintiff, and a skid mark. The speed limit on Monroe street was 25 miles per hour. It is contended that the plaintiff told an officer investigating the accident soon thereafter that he had been going 35 miles per hour. On his adverse examination about a year after the accident he stated that he was traveling at least 25 miles per hour. At the trial he stated that about midway of the block south of Mason street his speed was about 10 miles per hour; that he increased his speed when the light changed, and that when he reached the center of the intersection his speed was 20 to 25 miles per hour, and he maintained the same speed until he jammed on his brakes. On cross-examination he testified that he did not think he was going faster than 25 miles per hour and did not think he could have been going as fast as 35 miles per hour. He would not deny that he had told a police officer the night of the accident that he was going 35 miles per hour and said he was dazed and did not remember much that occurred immediately after the accident. His testimony upon the trial was corroborated by the testimony of a Mr. Daniell, who was proceeding in a northerly direction on Monroe street and who saw the accident. Daniell testified that as he approached Mason street the light was red so that he reduced his speed to approximately 15 miles per hour. The motorcycle passed

him at a speed he estimated at not more than 20 miles per hour.

Following the hearing upon motions after verdict the trial court had this to say:

"The speed question narrows itself to whether the evidence shows as a matter of law that the speed was in excess of the applicable 25 m.p.h. limit. It is not claimed that there were any circumstances that would have warranted a finding that a speed of less than the stated limit was negligence. Plaintiff's claim at the trial that his speed was not in excess of 25 m.p.h. was strongly supported by the testimony of a disinterested eyewitness, Mr. Daniell, who was behind plaintiff but a short distance and had a full view of the occurrence of the accident. It was, of course, for the jury, to resolve any conflicts between testimony given on plaintiff's adverse examination before trial and that given at the trial. The police report contained a notation that plaintiff's speed was 35 m.p.h. It did not recite that that was a statement made by plaintiff. Police Officer Van Hemelryk had no recollection of plaintiff having made such a statement to him. He said in effect that plaintiff must have told him that because the speed of a car is never stated in the report unless the statement of speed comes from the driver. In other words, his testimony rested on a report, the contents of which he had forgotten long before the trial, and upon a practice. While plaintiff did not flatly deny making such statement and only said that he did not 'remember much after the accident; I was sort of dazed,' he also said that he did not deny telling the police officer that he was going 35 m.p.h., 'because I don't know anything about it.' I think it was for the jury to give such effect as they chose to the officer's testimony. At any rate, the officer's testimony at best constituted an admission against interest to be thrown into the scales and weighed by the jury against evidence adduced at the trial that supported plaintiff's claim that the speed limit was not violated."

Thus we are presented a situation that is fairly common. There is a conflict in the evidence. This clearly presented a question to be resolved by the jury. There was credible

evidence to support the finding of the jury and we cannot set aside its determination. Nor could the trial court rule that plaintiff's speed was excessive as a matter of law where the conflict in the evidence presented an issue for determination by the jury.

An officer who investigated the accident soon after it happened testified that he found a skid mark approximately 52 feet in length leading to the place of the collision. At the hearing on motions after verdict the defendants produced the chart prepared by the motor vehicle department showing average stopping distances for automobiles having brakes in first-class condition. This chart was not introduced during the trial. From it, however, the defendants contend that it is possible to make a mathematical computation of the speed of the motorcycle from the length of the skid mark. Again we refer to the decision of the trial court on motions after verdict, wherein it stated:

"A further question is whether the skid mark left by plaintiff's motorcycle is decisive on this question of speed. The mark was paced off by Officer Nelson and found by him to be 'approximately 52 feet.' The only testimony in the case as to the distance required to stop a motorcycle as compared to a car came from the plaintiff. He said his brakes were in very good condition, having been relined about six months previously, and that, because of the difference in weight and the fact that a car has four wheels with which to brake, it takes longer to bring a motorcycle to a stop with its brakes than it does a car,—about twice as long, he said. . . .

"To the extent that reaction time may be here important it may be noted that reaction time as respects stopping an automobile covers the period it takes a person 'to grasp the situation and to shift his foot from the accelerator to the brake pedal for effective braking action.' A motorcycle is not operated by a foot feed.

"It is obvious that plaintiff's testimony with reference to the distance it takes to stop a motorcycle as compared to an automobile had reference only to braking distance. Assum-

ing that a skid mark 'approximately' 52 feet long could be actually either 50 feet or 54 feet long and taking the distance most favorable to plaintiff, which is the shorter length, what does the 50-foot skid mark of a motorcycle mean on the chart? The only evidence in the case is that it takes twice the distance to stop a motorcycle as it does a car. A motorcycle skid mark of 50 feet would, under such test, have the same significance as an automobile skid mark 25 feet long. It is obvious that the skid mark here in question, under the chart, does not necessarily mean a rate of speed in excess of 25 m.p.h., even though at the time of impact the motorcycle still had some speed, described by plaintiff as follows:

" 'I wasn't moving very fast; I'd say maybe five miles an hour at the most,—if I was going that fast.'

"In any situation, a physical fact, to be determinative, must, in addition to being established beyond any reasonable ground for doubt, point unerringly to the fact it is claimed to establish. For instance, in a case involving an automobile, with the stopping-distance chart in evidence, and the car involved having efficient brakes, it could be reasonably claimed that skid marks of 22 feet established as a matter of law a speed in excess of 10 m.p.h. However, it could not be claimed that skid marks of 22 feet established as a matter of law a speed of exactly 20 m.p.h. or not less than 20 m.p.h. The table is based upon averages. The exact or nearly exact rate of speed of a particular automobile cannot be accurately determined from the length of a skid mark with the aid of the chart only. And because of the latitude of error that exists when an attempted deduction of that kind is resorted to, a skid mark cannot be considered as establishing any particular rate of speed that would lie within the latitude of error. It is my conclusion that had the automobile stopping-distance chart been in evidence it would not have established as a matter of law a speed on the part of the motorcycle in excess of 25 m.p.h."

There is no doubt but that the trial court analyzed this argument properly.

The defendants next contend that the damages were excessive. This contention is based in part upon a claim that

the jury disregarded an instruction of the trial court, as follows:

"Now you are further instructed that it became the duty of plaintiff when he was injured in the collision, to exercise ordinary care to mitigate or lessen his damages; and he is still under such duty. By 'ordinary care' as that term is here used is meant the care ordinarily exercised by the great mass or majority of mankind or its type, the ordinarily prudent person, under the same or similar circumstances. The duty to mitigate damages on the part of an injured person imposes the duty to submit to and undergo such surgical or medical treatment within a reasonable time as will probably improve his condition and is reasonably within his means. In fixing damages you will keep in mind this duty of plaintiff to exercise ordinary care to mitigate his damages."

The evidence shows that at the time of the trial the plaintiff was twenty-eight years of age. There was medical testimony to show that his knee was injured and will require surgery, and even after surgery there will be permanent disability in that there will be some limitation in the extension of the leg. In other words, even after surgery the plaintiff will never be able to straighten out his leg fully. We have carefully reviewed the record with respect to damages and do not find that the jury disregarded the instructions of the court or that it awarded excessive damages.

Finally the defendants contend that the jury's finding of no negligence on the part of the plaintiff as to speed and management and control, combined with the highly excessive award of damages, evincing a complete disregard of the court's instructions, stamps the verdict as perverse and grossly contrary to the great weight and preponderance of the evidence, and indicates strong passion and prejudice against the defendant. This argument falls because it is based upon two contentions that have been resolved against the defendant. We can find no evidence of passion or prejudice on the part of the jury. The same issues raised here were raised

before the trial court on motions after verdict. The trial court gave them careful consideration, as we have done here. It found no error in the trial, and we agree.

*By the Court.*—Judgment affirmed.