ESTATE OF BURNS: WELLS, Appellant, v. McDONALD, Respondent.

*March 2—March 31, 1964.*

For the appellant there was a brief and oral argument by *H. R. George* of Milwaukee.

For the respondent there was a brief by *J. M. Slechta* and *Schultz & Slechta,* all of Jefferson, and oral argument by *J. M. Slechta.*

GORDON, J.

*Appealability.*

The appeal was taken from a decision of the trial court dated July 5, 1963, which provided as follows:

"An order may be drawn admitting Proponent's Exhibit 1 to probate as the last will and testament of Ernest Burns, deceased."

Although the issue was not raised by the parties, it is clear that the appeal was taken from the court's decision, which is comparable to an order for judgment and, thus, not normally appealable. Sec. 274.33, Stats. A final order was entered on July 19, 1963, admitting the will to probate, but the appeal was not taken from the latter order. We have concluded that the court has jurisdiction to examine this appeal on its merits by reason of sec. 274.11 (4), as interpreted in *Baumgarten v. Jones* (1963), 21 Wis. (2d) 467, 124 N. W. (2d) 609. Under the *Baumgarten Case,* at page 470, this court held that where an appealable order or judgment has in fact been entered but proper notice of appeal has not been served, a respondent who participates in the review of the merits before the supreme court without objection has waived any question of jurisdiction.

In the instant case, the respondent did not make an appropriate objection on the ground of jurisdiction of her person; although the appeal was taken from the wrong order, a final order has in fact been entered and, accordingly, we may consider the merits of this appeal.

*Undue Influence.*

The testator, Mr. Burns, was sixty-three years of age and had been blind since 1958. He and Fannie McDonald, the respondent, lived in the same dwelling house but were not married. Mrs. McDonald and the appellant were hostile to one another. The foregoing facts appear to us to be the most significant matters advanced by the appellant in her effort to establish undue influence.

There are numerous other minor circumstances which, in our opinion, add very little weight to the appellant's contentions. For example, the record discloses that Mrs. McDonald

insisted on salting the food of Mr. Burns rather than allowing anyone else to do it. The record also shows that Mrs. McDonald insisted that a new automobile that was being purchased by the testator be a Cadillac, although Mr. Burns preferred to purchase a Chevrolet. As evidence of the hostility that existed between Mrs. McDonald and the appellant, Estelle Wells, the record reflects the fact that upon the occasion of the death of one of Mr. Burns' sisters, Mrs. McDonald insisted upon excluding Estelle Wells from participating in the funeral arrangements. The record also contains evidence to the effect that Mr. Burns wanted to sell his property in Jefferson county but complained that when potential purchasers called to make inquiry, the respondent did not apprise him of their calls.

In our opinion, all the foregoing, if unrebutted and accepted as true, would scarcely support a finding of undue influence. However, the record contains a wealth of contradictory evidence, and we are persuaded that the trial court's finding of no undue influence was thoroughly warranted.

It must be conceded that Mrs. McDonald had the opportunity to influence Mr. Burns, since she lived in the same household with him for many years. The probabilities of her being able successfully to impose her will upon him were significantly reduced, however, by the fact that each of his wills was executed away from the home and in her absence. Furthermore, the original and all copies of the wills were retained by Mr. Burns' attorney.

Even more important, however, is the fact that the evidence clearly demonstrates that Mr. Burns' nature was one which would preclude his susceptibility to improper influence. Several witnesses who were in a position to know testified that he was a man with a firm mind of his own. Notwithstanding his blindness, he was a hardheaded businessman who retained full control of his mental processes until his death. For example, Mr. Saffro, who had handled his af-

fairs for twenty-five years, described Mr. Burns' state of mind at the time he executed his last will in these words: "He was fully competent and he knew exactly what he was doing and exactly what he wanted. He was a man of firm conviction and expressed himself very clearly."

The appellant suggests that there was a confidential relationship between the deceased and Mrs. McDonald. This arose, it is alleged, by reason of the fact that Mrs. McDonald was his business associate. In our opinion, the record discloses nothing more than that at one time Mrs. McDonald kept books for Mr. Burns, and even that relationship terminated long before the will in question was executed. Mrs. McDonald's influence, if she had any, was purely in the domestic sphere rather than in the business world. This relationship did not give rise to a confidential association such as the court had in mind in *Will of Faulks* (1945), 246 Wis. 319, 360, 17 N. W. (2d) 423.

There is evidence that Mrs. McDonald held herself out as being married to Mr. Burns. However, she denied that she shared a bedroom with him. The nature of their relationship has no legal consequence in our deciding this will contest. In *Will of Golz* (1926), 190 Wis. 524, 527, 209 N. W. 704, this court said:

"Granted that a man may not measure up to the approved standard in morality, that does not deprive him of the right to dispose of his property as he pleases, so long as it is evident that the will expresses the free intent and purpose of the testator."

A similar view is expressed in Atkinson, Wills (2d ed., hornbook series), p. 258, sec. 55:

"Even the influence which results from immoral relationships to the testator is not undue if it springs from affection rather than domination of mind. The influence of a mistress is not necessarily undue, while that of a wife under certain circumstances may be so regarded. The law does not con-

182

demn the gift merely because of immoral activities between the testator and the donee, nor is the disposition allowed to stand simply because their general association is one which is socially approved."

The result of the will in question is not unnatural or shocking. Mrs. McDonald lived with Mr. Burns for over ten years. Judge KADING correctly noted that during this period "she had been building up tenure." The inclusion of Mrs. McDonald in his testamentary plan can reasonably be attributed to his affection for her and his appreciation of her loyal service, particularly during the last several years while he was blind. In our opinion, the appellant has shown opportunity on the part of Mrs. McDonald to unduly influence Mr. Burns, but she has fallen short in establishing susceptibility, disposition, or result. See *Will of Freitag* (1960), 9 Wis. (2d) 315, 101 N. W. (2d) 108. Cf. *Estate of Culver* (1964), 22 Wis. (2d) 665, 126 N. W. (2d) 536.

*By the Court.*—Order affirmed.