HARGROVE, by Guardian *ad litem,* and another, Appellants, v. PETERSON and another, Respondents.

*No. 237. Argued September 9, 1974.—Decided October 3, 1974.*
(Also reported in 221 N. W. 2d 875.)

120

For the appellants there were briefs and oral argument by *Theodore W. Harris* of Racine.

For the respondents there was a brief by *Whaley & Whaley* of Racine, and oral argument by *John V. Whaley*.

ROBERT W. HANSEN, J.   Several issues are raised on this appeal and each will be considered in turn, with each to be resolved on the particular facts of the particular record made in this particular case.

*Jurisdiction to hear appeal.*   Respondents contend that since the appeal here is from the verdict of the jury rather than from the judgment this court lacks jurisdiction to entertain this appeal.   Both the notice of appeal and the undertaking on appeal state that plaintiffs appeal "from the jury verdict."   A jury verdict is not itself an appealable order or judgment.   When an order is not appealable, this court lacks subject-matter jurisdiction and any attempted appeal must be dismissed.[1]   However, sec. 274.11 (4), Stats., provides that this court has subject-matter jurisdiction over an appeal from the time an appealable order or judgment is entered.   Relying on this statute, this court has held that, where an appealable order or judgment has been entered, but

---

[1] *Gallagher v. Schernecker* (1973), 60 Wis. 2d 143, 208 N. W. 2d 437.

no proper notice of appeal therefrom has been served, a respondent who participates in a review of the merits thereof without appropriate objection on the ground that jurisdiction over his person has not been obtained, has waived his objection.[2] Since respondents in the case before us raised the issue of appealability for the first time in their written brief and submitted such brief arguing the case on the merits before moving to dismiss the appeal, we apply sec. 274.11 (4), as interpreted and applied in *Baumgarten*[3] to find waiver of objection and jurisdiction in this court to hear this appeal.

*Error as to instructions given.* Appellants contend that it was error for the trial judge to give the standard instruction on duty to mitigate,[4] in conjunction with

---

[2] *Baumgarten v. Jones* (1963), 21 Wis. 2d 467, 124 N. W. 2d 609, finding waiver of objection to a notice of appeal referring to an order directing verdict and denying judgment on the verdict, rather than from the judgment itself. (Pointing out that sec. 274.11 (4), Stats., altered the rule of *Jaster v. Miller* (1955), 269 Wis. 223, 69 N. W. 2d 265, upon which respondents in the case before us rely.)

[3] *Id.* at pages 469, 470. *See also: Estate of Burns* (1964), 23 Wis. 2d 175, 127 N. W. 2d 239, this court holding an appeal from the decision of a trial court comparable to an appeal from an order for a judgment and basing its right to hear the appeal on sec. 274.11 (4), Stats., as interpreted by *Baumgarten v. Jones, supra.*

[4] Wis J I—Civil, Part II, 1730, Duty to Mitigate, was submitted by the trial court as follows: "You are further instructed that it became the duty of the plaintiff when he was injured in the collision to exercise ordinary care to mitigate, or lessen, his damages, and he is still under such duty. By ordinary care, as that term is here used, is meant the care usually exercised by a person of ordinary intelligence and prudence, under the same or similar circumstances. The obligation to mitigate damages imposes the duty of exercising ordinary care to seek medical or surgical treatment and to exercise such ordinary care to submit to and undergo such recommended surgical or medical treatment within a reasonable time, as will probably improve his condition, and is not hazardous and is reasonably within his means. In

the standard instruction on duty of jury not to speculate.[5] Appellants argue that the instruction on duty to mitigate was inappropriate because the elective surgery involved was to occur in the future and, with guessing or speculation on the part of the jury prohibited, it could not be determined to a reasonable certainty whether the injured plaintiff would submit to the operation recommended by his doctor.

As to the duty to mitigate instruction, it derives from a case where the plaintiff suffered a knee injury which would require surgery at some future date, with some permanent disability and limitation remaining after the surgery.[6] In refusing to find that the jury disregarded the instruction given, the court clearly applied the duty to mitigate to elective surgery in the future. We find

---

fixing damages you will keep in mind this duty of plaintiff to exercise ordinary care to mitigate his damages; and, if you find that he will not do so, you should not include in your answer to this question any amount for consequences of his injuries which could have been averted by the exercise of such care."

[5] Wis J I—Civil, Part II, 1740, Jury not to Speculate, was given by the trial court as follows: "The law places upon a plaintiff the burden to establish to a reasonable certainty the damages sustained by him. If you find the evidence in this case to be so uncertain that you cannot do more than merely guess, speculate, or conjecture as to whether or not any specific damages are sustained you cannot allow damages in this case on account of any such claimed result of the accident. The law permits and allows only such damages as have been proved to be to a reasonable certainty to result from the accident. The duty or burden to prove damages to a reasonable certainty by the greater weight of the credible evidence is not satisfied by evidence which merely shows that something might or might not exist or might or might not occur in the future. Damages must be established by evidence and reasonable inferences from evidence. Mere possibilities leave the solution of an issue of fact in the field of speculation and conjecture to such an extent as to afford no basis for an inference to a reasonable certainty; and, in the absence of at least such an inference, there is no sufficient basis for a finding of fact."

[6] *Loser v. Libal* (1955), 269 Wis. 418, 69 N. W. 2d 463.

that the instruction is not inappropriate where the situation presented involves future surgery or future medical treatment.

As to the duty not to speculate instruction, it merely makes clear that probability, not possibility, is required as to a claim of future disability by reason of an injury. To justify an assessment of damages for future or permanent disability, it must appear by the proofs offered and on the record made that such continued or future disability is reasonably certain to result from the injuries sustained.[7] We find nothing inappropriate as to this standard instruction being here given, nor in the two instructions challenged being given.

Additionally, appellants contend that the duty to mitigate instruction placed an adult standard of reasonable care upon a plaintiff, nine years old at the time of the trial. In cases involving contributory or comparative negligence in the causation of injury, this court has held that the degree of care required of a child differs from that expected of an adult in that the former involves the child's age, capacity, discretion, knowledge and experience.[8] We need not discuss the applicability of this holding to the broad variety of situations that could arise involving the duty to mitigate damages. It is enough here to note that the only medical testimony recommending future surgery related to a corrective operation to be performed when the child plaintiff was thirteen or fourteen years of age. No testimony was offered as to the father's or mother's intention to have or not to have the operation, but it is clear that the decision and expense of the operation would likely be theirs.

[7] *See: Kowalke v. Farmers Mut. Automobile Ins. Co.* (1958), 3 Wis. 2d 389, 407, 88 N. W. 2d 747.

[8] *Rossow v. Lathrop* (1963), 20 Wis. 2d 658, 663, 123 N. W. 2d 523. *See also: Blahnik v. Dax* (1963), 22 Wis. 2d 67, 74, 125 N. W. 2d 364.

It is reasonable to expect and require that the child would rely upon his parents' judgment. While the duty to mitigate under these circumstances might devolve on both child and parent,[9] we hold that the standard as to reasonableness involved is the adult standard as to what is reasonable in the acceptance or rejection of elective surgery to mitigate damages.

*Error as to instruction refused.* Appellants contend that it was error for the trial court to refuse to instruct the jury as to the child plaintiff's life expectancy. (The parties stipulated that the child plaintiff had a life expectancy of 60.51 years.) Where there was testimony that the plaintiff would never recover from a condition of partial disability, and a life expectancy table had been read to the jury, this court early held that it was not error to instruct the jury that they might judge the probable length of the plaintiff's life under the testimony in assessing damages for future disability.[10] In the case before us, no similarly clear situation is presented. What is here involved is the matter of the plaintiff being required to wear and pay for one-fourth inch heel lifts for the remainder of his life. However, if the jury accepted the testimony of plaintiffs' doctor, heel lifts would be required only until the age of thirteen or fourteen, when the reasonable procedure would be to have a corrective operation. No future purchases of heel lifts would be required. If the jury elected to accept, as it apparently did, the testimony of defendants' doctor, the corrective operation was not required or recommended, and any purchase of half-inch heel lifts in the immediate or distant future was a matter of individual wish or

---

[9] *See: Lange v. Hoyt* (1932), 114 Conn. 590, 159 Atl. 575, where the court apparently felt that the duty to mitigate as to future damages rested with both the child plaintiff and her parent.

[10] *Waterman v. Chicago & Alton R. Co.* (1892), 82 Wis. 613, 52 N. W. 247, 52 N. W. 1136.

choice. Under this medical testimony, no award of damages for heel lifts was indicated. However, the jury did award $200, enough to compensate the parents for cost of heel lifts up to the date of trial and for fifteen years thereafter. The trial court upheld the $200 award for heel lift expenses, reasoning that the jury was entitled to compensate the parents for purchase of heel lifts until the age of majority, with purchase by the child of heel lifts thereafter, under the doctor's testimony, a matter of choice for which an award need not be made. Plaintiffs argue that if the jury was to award heel lift damages at all, and it was on this record not required so to do, it should have awarded $600 for heel lifts for the life expectancy of the plaintiff, and not $200 for fifteen years in plaintiff's future. However, with competent medical testimony making the purchase of heel lifts entirely a matter of choice, not necessity, we find no legal inconsistency in the jury's awarding of $200 for the purpose stated. There is some logic in the all-or-nothing-at-all alternatives, but with the element of choice, not necessity, made the determining factor, we find no reversible error in the $200 award for future purchase of heel lifts.

*Exclusion of testimony.* Appellants contend that the trial court improperly excluded testimony relating to the cost of special shoes to which heel lifts were attached. The excluded evidence consisted of testimony by the child's mother that she was unable to have heel lifts put on shoes with plastic heels, and was required to purchase a special type of shoe. A shoe salesman testified to the cost of the shoes involved. The prescription written by plaintiffs' doctor called only for heel lifts, with no mention of special shoes. The trial court reserved a ruling on the admissibility of this evidence until the completion of all testimony. No evidence was offered to show a medical need for special shoes. Nor was there any

offer of competent evidence that heel lifts could be attached only to special shoes. Evidence of medical expenses is inadmissible unless the item involved bears a reasonable relation to the diagnosis and treatment of the alleged injury.[11] Plaintiff has the burden of proving his proper and required medical expenses. Here that burden was not met. The evidence was properly excluded.

*Refusal to submit question.* Plaintiffs-appellants contend that error was committed in the trial court's refusal to submit a special verdict question to the jury on the loss of future earning capacity. This court has stated, ". . . when there was evidence of a permanent injury and also affirmative evidence that there was no impairment of earning capacity, the jury could not infer from the permanency of the injury that there was a loss of earning capacity in the absence of some evidence, additional to permanency of injury, to support such loss and to contradict the affirmative evidence that the permanent injury was not of such a nature as to impair the plaintiff's earning capacity." [12] In the case before us, appellants rely solely for the claim of future loss of earning capacity on Dr. Hammes' testimony that future back problems would probably result if the corrective operation he recommended was not had.

What the appellants apparently sought to have the jury do was to reject Dr. Hammes' testimony that a corrective operation at age thirteen or fourteen was reasonably required, accept Dr. Sattler's testimony that such operation was not required or indicated, and proceed to award damages for future back problems which Dr. Hammes testified would probably follow not having the corrective surgery. Even if the fitting of the two halves

[11] *Michalski v. Wagner* (1960), 9 Wis. 2d 22, 31, 100 N. W. 2d 354.

[12] *Wells v. National Indemnity Co.* (1968), 41 Wis. 2d 1, 11, 162 N. W. 2d 562, summarizing earlier holding in *Neider v. Spoehr* (1968), 39 Wis. 2d 552, 159 N. W. 2d 587.

of the two doctors' testimony into one reconstituted whole could be done, the sphere would not here stay afloat. This is not a case where we deal with an established loss of hearing,[13] or permanent brain damage.[14] No evidence was here presented by the plaintiffs as to how or to what extent plaintiff's earning capacity would be affected by the back problems which Dr. Hammes testified would probably follow not having the corrective operation he recommended. The only testimony relating to future loss of earning capacity to be found in this record is that of Dr. Sattler who testified that in his opinion there would be no loss of earning capacity. He testified: "I don't feel this will hinder his activity nor will it cause any disturbance in his ability to be gainfully employed." On motions after verdict, the trial court stated: ". . . Both doctors appeared to agree that no permanent disability could be anticipated though Doctor Hammes' opinion was conditioned upon additional corrective surgery. It would seem that the jury was obliged in logic to accept the thesis of one or the other of these experts. It could not conform its findings to the testimony of both since both agree that the treatment will produce the absence of a disability. The difference lies in the necessity for further surgical treatment which would entail certain attendant discomfort. The verdict shows that the jury obviously adopted the thesis that the injury was presently nondisabling without the requirement of further medical treatment. . . ." That sums it up, and we agree with the trial court that the record here would not support a jury finding that the injuries sustained by the child plaintiff would impair his future earning capacity.

*By the Court.*—Judgment affirmed.

[13] *Allen v. Bonnar* (1963), 22 Wis. 2d 221, 125 N. W. 2d 570.
[14] *Thoreson v. Milwaukee & Suburban Transport Corp.* (1972), 56 Wis. 2d 231, 201 N. W. 2d 745.